IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN CAFFERTY,

               Plaintiff,                         CV-06-1252-ST

      v.                             FINDINGS AND
                                      RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Stephen Cafferty ("Cafferty"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("the Act"), 28 USC §§ 401-34, 1381-1383f.  This court has jurisdiction under 42 USC

§§ 405(g) and 421(d).  The parties agree that the Commissioner's decision must be reversed and

remanded pursuant to Sentence Four of 42 USC § 405(g).  However, Cafferty seeks a remand for

an immediate determination of benefits while the Commissioner seeks a remand for further proceedings necessary to complete the record.  For the reasons that follow, this case should be remanded for a determination of benefits as requested by Cafferty.

## BACKGROUND

Cafferty was born in December 1961 and was age 41 on the onset of his disability and age 44 at the time of the ALJ's decision.  Tr. 54, 55.[1]  He has a tenth-grade education and is insured for SSI benefits through December 31, 2006.  Tr. 69, 101.  He maintained gainful employment for much of his adult life, working in a variety of skilled jobs including tool grinder, plumber, motorcycle mechanic and machinist.  Tr. 94, 115.

Cafferty alleges that his disability began on June 25, 2002, based on a combination of mental and physical impairments, including post-traumatic degenerative arthritis in his shoulder and right leg; bilateral carpal tunnel syndrome; degenerative disc disease of the cervical spine; depression; anxiety; and a personality disorder with antisocial traits.  Tr. 93.

## PROCEDURAL HISTORY

Cafferty applied for DIB and SSI on August 30, 2002.  Tr. 55.  His application was denied initially and upon reconsideration.  Tr. 35-46.  Cafferty requested a hearing before an ALJ which was held on September 14, 2005.  Tr. 47, 483.  The ALJ issued her decision on December 23, 2005, finding him not disabled.  Tr. 17-34.  Cafferty timely appealed the ALJ's decision to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 7-9; 20 CFR § 404.981.

## DISABILITY ANALYSIS

---

[1] Citations to "Tr." are to the Administrative Record filed March 29, 2007 (docket #10).

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]" 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). If so, then the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment." 20 CFR §§ 404.1520(c), 416.920(c). If not, then the claimant is not disabled.

At step three, the Commissioner determines whether the severe impairment "meets or equals" one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). 20 CFR §§ 404.1520(d), 416.920(d). If so, then the claimant is disabled.

If the analysis proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC"). The RFC is an assessment of work-related activities the claimant can perform on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1545(a), 416.920(e), 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

Using the RFC, the Commissioner determines at step four whether the claimant can perform past relevant work.   20 CFR §§ 404.1520(e), 416.920(e).  If so, then the claimant is not disabled.

Finally, at step five, the Commissioner determines whether the claimant is able to perform other work in the national economy.  20 CFR §§ 404.1520(f), 404.1566, 416.920(f).  If not, then the claimant is disabled.

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## ALJ'S FINDINGS

At steps one and two, the ALJ found that Cafferty suffered from multiple medically determinable severe impairments, including carpal tunnel syndrome, cervical stenosis, right shoulder degenerative changes, status post right shoulder decompression, and personality disorder with depressive symptoms. Tr. 25, 33.  However, the ALJ found that these impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart B, Regulation No. 4 ("Listing of Impairments").  Tr. 33.

The ALJ found that Cafferty retained an RFC that physically limited him to light work with only occasional overhead reaching or gross manipulations and no repetitive forceful manipulation with his hands.  Tr. 31, 34.  Mentally he was limited to having only limited interactions with coworkers and no interactions with the general public.  *Id*.  Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Cafferty's RFC precluded him from returning to his past relevant work.  Tr. 32, 34.

At step five, the ALJ found that there existed a significant number of jobs in the national economy that he could perform, in particular, data entry clerk, bench hand/silver jewelry, and optical assembler.  Tr. 33, 34.  Therefore, the ALJ determined that Cafferty was not disabled at any time through the date of her decision.

## CLAIMANT'S ARGUMENTS

Cafferty primarily argues that at step five the ALJ improperly relied upon faulty testimony from the VE in determining that substantial jobs existed in the national economy which he is able to perform.  Secondarily, he contends that the ALJ erred at prior steps of her analysis by:  (1) rejecting the opinions of an examining psychologist, chiropractor, and lay witness; (2) failing to consider his impairments in combination; (3) finding that his impairments do not meet or equal any listed impairment; and (4) determining his RFC.  Cafferty asks this court to reverse the ALJ's decision and remand this case for an immediate determination of benefits.

## COMMISSIONER'S MOTION TO REMAND

Because the Commissioner agrees with Cafferty that the ALJ erred by relying on faulty testimony from the VE, he has filed a motion for remand (docket # 23).  However, that motion requests a remand for further administrative proceedings.

The decision whether to remand for a determination of benefits or for further proceedings is a decision fully within the discretion of the district court.  *See Harman v. Apfel*, 211 F3d 1172, 1179 (9th Cir 2000), *cert denied*, 531 US 1038 (2000).  The central issue in determining whether to remand a case for immediate determination of benefits or for further proceedings is the "utility of such proceedings."  *Id*.  Thus, "remand for further administrative proceedings is appropriate if

enhancement of the record would be useful.  Conversely, where the record has been developed

fully and further administrative proceedings would serve no useful purpose, the district court

should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F3d 587, 593

(9th Cir 2004) (internal citations omitted); *see also Smolen v. Chater*, 80 F3d 1273, 1292 (9th Cir

1996) (remand for award of benefits appropriate where "(1) the ALJ has failed to provide legally

sufficient reasons for rejecting [the] evidence, (2) there are no outstanding issues that must be

resolved before a determination of disability can be made, and (3) it is clear from the record that

the ALJ would be required to find the claimant disabled were [the] evidence credited").

## FINDINGS

The Commissioner argues that unresolved issues merit further consideration on remand.

One unresolved issue is the failure by the ALJ to address the inconsistency between the VE's

testimony and the *Dictionary of Occupational Titles* ("*DOT*"),[2] US Dep't of Labor (rev. 4th ed.

1991), in violation of SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

The ALJ assigned Cafferty an RFC which limited him to only occasional gross

manipulation.  Yet according to the *DOT*, the occupations identified by the VE and relied upon

by the ALJ require frequent handling.  The VE testified upon cross-examination that the inability

to engage in frequent handling would preclude performance of the identified jobs.  Tr. 532-33.

Nevertheless, the ALJ still relied upon those jobs in concluding that a significant number of jobs

exist in the national economy which Cafferty can perform.

---

[2] The Secretary uses the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F2d 1273, 1276 (9th Cir 1990).  In *Villa v. Heckler*, 797 F2d 794, 798 (9th Cir 1986), the court noted that "[t]he Secretary may rely on the general job categories of the [DOT], with its supplementary *Selected Characteristics*, as presumptively applicable to a claimant's prior work."

SSR 00-4p[3] requires the ALJ to address unresolved inconsistencies between VE testimony and the *DOT*. More specifically, the ruling requires ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [VEs] and information in the [*DOT*] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved," prior to relying on a VE's testimony to support the ALJ's determination. 2000 WL 1898704, at *1. When there is a conflict, neither the DOT nor the VE's testimony "trumps" the other. *Id* at *2. Instead, the job classifications in the *DOT* are given a presumption of applicability which is rebuttable by information from other sources, including the testimony of a VE. *Johnson v. Shahala*, 60 F3d 1428, 1434-35 (9th Cir 1995). The ALJ may deviate from the definitions in the *DOT* so long as "the record contains persuasive evidence to support the deviation." *Id* at 1435.

According to the Commissioner, the ALJ should have asked the VE to clarify the conflict between Cafferty's manipulative limitations (only occasional gross manipulation) and the requirements of the identified jobs (frequent handling) by asking whether there was a reasonable explanation for the conflict and by stating how she resolved this conflict based upon the VE's testimony and the other evidence in the record. Because the ALJ failed to comply with the requirements of SSR 00-4p, the Commissioner maintains that it is unclear whether the ALJ properly relied on the VE's testimony and urges a remand for further proceedings.

The Commissioner cites *Massachi v. Astrue*, 486 F3d 1149, 1152-53 (9th Cir 2007), as further support for his position. In *Massachi*, the court addressed whether an ALJ could rely

---

[3] Social Security Rulings are issued by the Social Security Administration and "reflect the official interpretation of the SSA and are entitled to 'some deference' as long as they are consistent with [the Act] and regulations." *Avenetti v. Barnhart*, 456 F3d 1122, 1124 (9th Cir 2006) (quoting *Ukolov v. Barnhart*, 420 F3d 1002, 1005 n2 (9th Cir 2005). Nonetheless, as they constitute the agency's official interpretations of its own statutes and regulations, they are binding on ALJs. *Terry*, 903 F2d at 1275 n1 (citations omitted).

upon the testimony of a VE concerning the requirements of a particular job without first complying with the requirements of SSR 00-4p by asking whether the testimony was consistent with the *DOT*.  The court found that the purpose of SSR 00-4p is to "ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [*DOT*]."  *Id* at 1153.  Because the ALJ failed to comply with the ruling, the court could not determine whether the ALJ properly relied upon the VE's testimony in denying benefits at step five of the disability analysis.  Absent a basis to determine whether substantial evidence existed to support the ALJ's decision, the court remanded the case to the ALJ to apply SSR 00-4p and determine "1) whether the jobs identified by the vocational expert are consistent with the definitions in the [*DOT*] and [the claimant's] limitations; and 2) whether there is a reasonable explanation for any inconsistencies between the vocational expert's testimony and the [*DOT*]."  *Id* at 1155.

The Commissioner asks this court to do the same here in order to resolve the apparent conflict between the VE's testimony and the *DOT*.  However, the Commissioner goes one step further and submits that in addition to further consideration of the vocational issues, the ALJ on remand also should be permitted to reevaluate Cafferty's RFC as necessary.

Both the ALJ's and the Commissioner's position are puzzling.  At the hearing, the ALJ gave the VE a hypothetical which included all limitations found by the ALJ.  One of those limitations was restricting Cafferty to "only occasional gross manipulation."  Tr. 527.  After testifying that the hypothetical posed by the ALJ would preclude Cafferty from performing his past relevant work, the VE identified the following possible jobs:  data entry clerk, decorator in the leather products industry, bench hand in the jewelry and silverware industry, and assembler

of optical goods.  Tr. 528-29.  The VE eliminated the decorator position upon further questioning

by the ALJ because it would require work with fine paint brushes and stamping.  Tr. 529.  Rather

than stop there, the ALJ continued to question the VE about the job choices and asked whether

any light jobs were available that would not require the use of his hands or only minimal use of

the hands.  Tr. 529-31, 533-36.  The VE was unable to suggest any additional jobs that fit within

Cafferty's physical, vocational and educational parameters.

       In the midst of this exchange, Cafferty's attorney posed the following question to the VE:

> Q:    If, let's, let me rephrase the question then.  If the person were not
> capable, well, was not capable of using their hands in a repetitive
> fashion up to two-thirds of the time, then would that limit, would
> that prevent the individual from performing any of the three jobs
> you've identified.
>
> A.    Yes.  I believe it would.

Tr. 532-33.

       Therefore, on cross-examination the VE admitted, as the Commissioner concedes, that

the identified jobs were unacceptable when adding the requirement of "handling" or "gross

manipulation."[4]  Perhaps the ALJ could have clarified why the VE identified these jobs in the

first place when the ALJ's hypothetical limited the claimant to only occasional gross

manipulation.  Indeed, the ALJ's continued questioning of the VE implicitly recognized that the

jobs identified by the VE did not fit the ALJ's criteria.  After the VE had identified several jobs,

the ALJ asked:  "I'm just, I'm asking if there is an additional job [the VE] might identify where

it's primarily a light job because of the, one, well, I'm looking for one that has really minimal

---

    [4]  In the Social Security context, "handling" and "gross manipulation" are used synonymously.  *See Hall v. Harris*,
658 F2d 260, 263 (4th Cir 1981); *Russel v. Astrue*, 2007 WL 3096277, at *9 (ED Cal Oct. 22, 2007); *Colon v. Apfel*, 1998 WL
823024, at *3 (ND Cal Nov. 13, 1998); *Merrill v. Astrue*, 2007 WL 922254, at *4 (D Me March 26, 2007) (citing cases).

use of the hands." Tr. 530. After further questioning, the VE explained that "the ones that I'm coming up with either require interaction with people or using the hands." Tr. 533. Whatever reason the VE may have had for suggesting the jobs initially, once the VE directly considered the specific limitation pointed out by Cafferty's attorney, which was consistent with the ALJ's original hypothetical, the VE admitted that Cafferty was unable to perform them.

Therefore, this case does not present the same issue addressed by *Massachi*. The error committed by the ALJ in *Massachi* was accepting the testimony of the VE without first asking whether it was consistent with the *DOT*. The error committed by the ALJ in this case was accepting the jobs erroneously identified by the VE, when both the VE's later testimony and the *DOT* reveal that, given his RFC, Cafferty is not capable of performing any of them.

Because the VE could identify no other jobs that would fit Cafferty's limitations, no unresolved issue remains to address on remand. Rather, at this point, the only purpose of remand would be to give the Commissioner another opportunity to do what he was unable to do the first time around, namely, carry his burden at step five of the disability analysis. Also troubling in the Commissioner's request to permit a new ALJ to reevaluate Cafferty's RFC. The Ninth Circuit has cautioned against utilizing this type of "'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F3d at 595 (citation omitted). In *Benecke*, the court held that remand for award of benefits was proper in the "unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the [VE] did not address the precise work limitations established by the improperly discredited testimony . . ." *Id*. It would be incongruous for a different result where

the VE does address the claimant's precise work limitations and, yet, still can recommend no gainful employment for the claimant.

### **RECOMMENDATION**

The Commissioner's Motion for Remand (docket # 23) should be DENIED and the Commissioner's decision should be REVERSED and REMANDED for a determination and award of benefits pursuant to Sentence Four of 42 USC § 405(g).

### **SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due March 14, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 28th day of February, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge